UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA

Civil Action No.: 3:20-cv-5492-MCR-EM

JOSEPH G. WOOD,

      Plaintiff,

vs.

MARSHA NICHOLS (ARNP),
DR. G. SEMPLE (C.H.O.)
CHARLES MAIORANA (WARDEN)

      Defendants.

_____/

### DEFENDANTS', MARSHA NICHOLS, ARNP, GEORGE J. SEMPLE, D.O. AND CHARLES MAIORANA, MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

Defendants, MARSHA NICHOLS, ARNP ("ARNP Nichols"), GEORGE J. SEMPLE, D.O. (referenced as Dr. G. Semple, hereinafter "Dr. Semple") and CHARLES MAIORANA ("Warden Maiorana"), by and through the undersigned legal counsel, and pursuant to Fed. R. Civ. P. 12(b)(6), move to dismiss Plaintiff's Amended Complaint as follows:

1.    Plaintiff, JOSEPH G. WOOD ("WOOD" or "Plaintiff"), *pro se*, an inmate with the Florida Department of Corrections currently housed at the Jefferson Correctional Institution, has filed an Amended Complaint [ECF 6] generally alleging, *inter alia*, that the failure to provide *adequate* medical care and treatment to him while incarcerated at Blackwater River Correctional Facility ("BRCF"), namely what he has described as a delay in treating his wrist fracture following a July 9, 2019 slip and fall, which he contends constituted deliberate indifference to Plaintiff's serious medical condition. [*Id*. at 4-8]. Plaintiff is claiming that the delay and/or denial of timely

care resulted in the inability to have surgery which resulting in a permanent disfigurement to his wrist. [*Id.*]

2.      For the reasons set forth in the incorporated Memorandum of Law below, Plaintiff's Amended Complaint should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, because the Amended Complaint fails to state a claim upon which relief can be granted as to ARNP Nichols, Dr. Semple and Warden Maiorana.

3.      WOOD's claims fail as a matter of law due to his failure to properly exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e(a).

4.      Additionally, since failure to exhaust pursuant 42 U.S.C. § 1997e(a) is an abatement defense properly raised on motion to dismiss with a Court properly referencing exhibits outside the four corners of the complaint, the Court should not convert this motion into a Summary Judgment pursuant to Fed. R. Civ. P. 12(d). *Bryant v. Rich*, 530 F.3d 1368, 1374 (11th Cir.2008). This means that procedurally the defense is treated "like a defense for lack of jurisdiction," that could be raised in a 12(b)(1) motion where the Court makes findings as dispute facts, although it is not a jurisdictional matter. *Id.*

5.      The claims Warden Mairoana, in a purely supervisory capacity should be dismissed as a matter of law.

## **MEMORANDUM OF LAW**

In accordance with Local Rule 7.1(E), N.D. Fla., Defendant offers the following Memorandum of Law in support of their Motion to Dismiss.

## I.      **Pleading Requirements and Motion to Dismiss Standard**

Pursuant to the standard set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), to survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." *Id.* at 555. Those facts must "state a claim to relief that is plausible on its face." *Id.* at 570. A plaintiff's complaint must be dismissed if the facts alleged "have not nudged [its] claims across the line from conceivable to plausible." *Id.* The Supreme Court has emphasized that "[t]he plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009).

In addition, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "A complaint must contain enough facts to indicate the presence of the required elements." *Andela v. Univ. of Miami*, 692 F. Supp. 2d 1356, 1370 (S.D. Fla. 2010) (citing *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1302 (11th Cir. 2007). "[C]onclusory allegations, unwarranted deductions of fact or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002); *see also Aldana v. DelMonte Fresh Produce, N.A., Inc.*, 416 F.3d 1242 (11th Cir. 2005); *Day v. Taylor*, 400 F.3d 1272 (11th Cir. 2005); *Davila v. Delta Ai*rlines, 326 F.3d 1183, 1185 (11th Cir. 2003). When, on the basis of a dispositive issue of law, no construction of the factual allegations of the complaint will support the cause of action, dismissal of the complaint is appropriate. *Williams v. Bierman*, 46 F. Supp. 2d 1262, 1263 (M.D. Fla. 1999); *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1992).

## II.    Plaintiff's Disagreement on a Matter of Medical Judgment Provides No Basis for Recovery Under Section 1983.

Plaintiff's Amended Complaint essentially alleges that he was denied *adequate* medical treatment while he was incarcerated at BRCF and claims that such denial of treatment amounts to deliberate indifference actionable under Section 1983.   However, Plaintiff's own speculative allegations together with the medical records filed with his Complaint make clear that his claim cannot be legally maintained under the instant facts.

The Amended Complaint is noticeably silent as to any specific allegations as to Dr. Semple and Warden Maiorana with regard to WOOD's medical care, whether individually or within official capacity.  Such deficiency is fatal to Plaintiff's claims.  Plaintiff essentially alleges he was improperly cared for by ARNP Nichols and non-party "Dr. Smith."   However, the nature of such claims – a disagreement over matters of medical judgment – does not permit recovery under § 1983, regardless.  Plaintiff's Amended Complaint, especially when compared to the chronology of treatment rendered by ARNP Nichols at the detention facility, the diagnostic imaging of (5) areas of his right upper extremity, the outside consultations with orthopedic surgeon Erwin Bennett, M.D. and hand specialist James Piorkowski, M.D., demonstrate the comprehensive repeated medical attention to Plaintiff's medical conditions for which he now complains. [ECF 1 at 17-31, 39-41, 43].  Notably, the last treatment record from the hand specialist on October 1, 2019 (the date before and after Plaintiff's referenced grievances) reflects: a) a history that Plaintiff has a *typical* malunion for a distal radius Colles'-type fracture treated conservatively with a splint, is able to use his wrist to lift heavy things and do spray automobiles, which are things he is planning to do when he gets out; b) physical exam of really quite good motion in both flexion and extension, no real fracture tenderness, finger sensation intact; c)  an assessment of closed fracture of distal end of right radius with routine healing and malunited distal radius fracture with good function and minimal discomfort; and e) a planned release to full activity with no indication for further

surgical treatment. [*Id.* at 30-31].  There is no indication from the BRCF records or outside specialist's records to support Plaintiff's layman, speculative contention that treatment at BRCF was inadequate, much less plausibly deliberately indifferent to give rise to a claim under § 1983.

A section 1983 claim "does not lie if a prisoner's complaint is directed at the wisdom or quality of medical treatment he received in prison, even if that treatment is so negligent as to amount to medical malpractice."  *Brown v. Prison Health Servs., Inc.,* 2008 WL 131168, at *3 (S.D. Ga. 2008) (quoting *Brinton v. Gaffney*, 554 F. Supp. 388, 389 (E.D. Pa. 1983)).  Indeed, the Eleventh Circuit has dismissed claims for deliberate indifference where the plaintiff alleged that he was monitored by prison medical staff regularly, was referred to specialists, received treatment and was prescribed pain medications and antibiotics. *See e.g., Coney, v. Grayer*, 195 Fed.Appx. 847 (2006)(unpublished).

The deliberate indifference standard is demanding, and merely negligent diagnosis or treatment is insufficient to meet the standard as a matter of law.  *See Estelle*, 429 U.S. at 102-04; *Adams v. Poag*, 61 F.3d 1537, 1543 (11th Cir. 1995).  "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."  *Estelle,* 429 U.S. at 106.  To rise to the level of deliberate indifference to a serious medical need, the "treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness."  *Tedesco v. Minnis*, 119 F. Supp. 2d 1320, 1326 (M.D. Fla. 2000) (citing *Rogers v. Evans,* 792 F.2d 1052, 1058 (11th Cir. 1986)).

It is well-established that matters of medical judgment do not support a Section 1983 claim. *See Faison v. Rosado*, 129 Fed. Appx. 490, 492 (11th Cir. 2005) ("Although [Plaintiff] might not agree with the method of treatment provided, matters of medical judgment do not give rise to a § 1983 claim.").  A plaintiff is not entitled to demand a particular type of treatment as long as a

physician exercises his professional judgment as to the appropriate course of action and provides some form of treatment, such as this Plaintiff himself admits in his [Amended] Complaint. *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *Campbell v. Sacred Heart Hosp.,* 496 F. Supp. 692 (E.D. Pa. 1989); *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990). "A difference of opinion over matters of medical judgment does not give rise to a constitutional claim." *Tedesco v. Minnis,* 119 F. Supp. 2d 1320, 1327 (M.D. Fla. 2000). Thus, Plaintiff's disagreement concerning the course of his treatment is not actionable under § 1983.

Where an inmate has received medical treatment but his claim is that the treatment provided was not adequate, as is the case here, courts should be reluctant to question the appropriateness of the healthcare providers' medical judgments. *Harris v. Coweta County*, 21 F.3d 388, 393 (11th Cir. 1994); *see also Estelle,* 429 U.S. at 106 (inmate failed to state a claim of deliberately indifferent medical care despite his contentions that other diagnostic techniques and treatment could have been pursued). The instant matter is exemplary of the type of medical judgment claim that should be dismissed as a matter of law.

Plaintiff has failed to demonstrate at the pleading stage that ARNP Nichols, much less Dr. Semple and Warden Maiorana, acted wantonly or with the conscious disregard of Plaintiff's condition that is required to establish a deliberate indifference claim. Plaintiff has failed to show that any of the Defendants conduct was so "grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986). Though Plaintiff disagrees with Defendants' manner of treatment, this difference of medical opinion does not rise to the level of deliberate indifference. *See Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1980).

**III.   WOOD failed to properly exhaust his administrative remedies.**

Plaintiff contends that he exhausted all available administrative remedies under the grievance procedures at BRCF [ECF 6 at 13-15; ECF 1 at 37, 44-54]. Notably, Plaintiff concedes to knowing these procedures and the requirements [ECF 1; 6 generally].

A. **Standard on Motion to Dismiss for Failure to Exhaust Available Administrative Remedies under the Prison Litigation Reform Act**

The standard on a Motion to Dismiss for Failure to Exhaust Available Administrative Remedies under the PLRA was articulated by this court:

> In *Bryant v. Rich*, 530 F.3d 1368 (11th Cir. 2008), the Eleventh Circuit outlined the procedure district courts should follow when presented with a motion to dismiss for failure to exhaust administrative remedies under the Prison Litigation Reform Act ("PLRA"). The court held that the defense of failure to exhaust should be treated as a matter in abatement. *Id.* at 1374. "This means that procedurally the defense is treated 'like a defense for lack of jurisdiction,' although it is not a jurisdictional matter." *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008) (*quoting Bryant*, 530 F.3d at 1374). Because exhaustion is a matter in abatement, "it should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment." *Bryant*, 530 F.3d at 1374-75 (citation and internal quotation omitted).
>
> Deciding a motion to dismiss for failure to exhaust administrative remedies involves two steps. *Turner*, 541 F.3d at 1082. First, the court looks to the factual allegations in the defendants' motion, and those in the plaintiff's response. *Id.* If they conflict, the court accepts the plaintiff's version as true. "If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." *Id.*; *see also Bryant*, 530 F.3d at 1373-74.
>
> If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, "the court proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." *Turner*, 541 F.3d at 1082 (*citing Bryant*, 530 F.3d at 1373-74, 1376). "The defendants bear the burden of proving that the plaintiff has failed to exhaust his available administrative remedies." *Id.* Upon making findings on the disputed issues of fact, the court then decides whether, under those findings, the plaintiff has exhausted his available administrative remedies.

*Crespo v. Scott*, 5:14CV195-MW-CJK, 2017 WL 1196464, at *4 (N.D. Fla. Mar. 1, 2017), *report and recommendation adopted,* 5:14CV195-MW/CJK, 2017 WL 1196446 (N.D. Fla. Mar. 29, 2017).

Factual disputes concerning the exhaustion of administrative remedies may be decided by the court sitting as fact-finder, "so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." *Bryant,* 530 F.3d at 1373–74, 1376. Even though evidence may be presented to support or refute a contention that a prisoner has not exhausted the grievance process, exhaustion is a "matter in abatement and not generally an adjudication on the merits," thus, it should be raised and treated as a motion to dismiss, not a summary judgment motion. *Id.,* at 1374–75.[1]

### B. <u>Exhaustion Requirement</u>

The Prison Litigation Reform Act ("PLRA") provides in relevant part that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). *See Porter v. Nussle,* 534 U.S. 516, 524–25, (2002) ("Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.").

"Exhaustion is a precondition to litigation in federal courts, and courts do not have the discretion to waive the § 1997e(a) requirement." *Mason v. Bridger,* 261 Fed. Appx. 225, 228 (11th

---

[1] When motions to dismiss are based on issues not enumerated under Rule 12(b), then Rule 43(c) governs "which permits courts to hear evidence outside of the record on affidavits submitted by the parties." *Bryant,* 530 F.3d at 1377, n. 16.

Cir. 2008) (citing *Booth v. Churner*, 532 U.S. 731, 741, 121 S.Ct. 1819, 1824 (2001)); *Johnson v. Meadows*, 418 F.3d 1152, 1155 -1156 (11th Cir. 2005) ("[The Act] entirely eliminates judicial discretion and instead mandates strict exhaustion, 'irrespective of the forms of relief sought and offered through administrative avenues.'" (quoting *Booth* at 741 n.6).[2] Further, "[t]he requirement is not subject to waiver by a court or futility or inadequacy exceptions." *Vinci v. Culpepper*, at *2 (citing *Booth* at 741 n.6). *See also Alexander v. Hawk*, 159 F.3d 1321, 1328 (11th Cir. 1998) ("The judicially created futility and inadequacy doctrines do not survive the PLRA's mandatory exhaustion requirement.").

The PLRA "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532, 122 S.Ct. 983, 992 (2002).

To exhaust administrative remedies, the PLRA requires that inmates comply with grievance procedures, including time deadlines. *Woodford v. Ngo*, 548 U.S. 81, 90-93, 126 S.Ct. 2378 (2006) (PLRA exhaustion requirement requires "proper exhaustion" and "demands compliance with an agency's deadlines and other critical procedural rules"). The Supreme Court in *Woodford* interpreted "exhausted" to mean "proper exhaustion," and held that an "untimely or otherwise procedurally defective" grievance would not properly exhaust remedies. *Id.* at 83-84 (2006)(emphasis added). This means that "a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Id.* at 88 (Emphasis added). Thus, "where an inmate's grievance is denied for failure to timely file, he is barred from bringing a federal action on his claim, as he

---

[2] Accordingly, "[e]xhaustion is required whether the plaintiff seeks declaratory and injunctive relief, monetary damages, or both." *Small v. Barton*, 2008 WL 5055657 (N.D. Fla. 2008) (citing *Booth*, 532 U.S. at 734, 121 S.Ct. at 1825).

did not fully and properly exhaust his administrative remedies." *Davis v. Florida Dept. of Corrections,* 264 Fed. Appx. 827, 828 (11th Cir. 2008) (citing *Minnis v. Meadows,* 418 F.3d 1152, 1154 (11th Cir. 2005)("an untimely administrative grievance does not satisfy the exhaustion requirement of the PLRA.") (emphasis added).

The Supreme Court has noted that in cases where state prisoners raised federal law claim, it is the correctional facility's grievance process that must be exhausted. *See Jones v. Bock*, 549 U.S. 199, 218, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007) ("Compliance with prison grievance procedures... is all that is required by the PLRA to 'properly exhaust'").

In Florida, the procedural rules an inmate must follow in order to properly exhaust their administrative remedies are promulgated by the Florida Department of Corrections and contained the Florida Administrative Code. *See* Fla. Admin. Code Chapter 33-103 ("Inmate Grievances"). To properly grieve an issue, an inmate must file a written informal grievance using Form DC6-236, [R. 33-103.005]. If the inmate is dissatisfied with the result of the informal grievance, he must next file a written formal grievance with the Warden's office using Form DC1-303, [R. 33-103.006]. Finally, if the inmate feels that the grievance has still not been satisfactorily resolved, he must submit a written appeal to the State Office of the Secretary ("Central Office") using Form DC1-303. [R. 33-103.007]. *See e.g. Parzyck v. Prison Health Servs., Inc.,* 627 F.3d 1215, 1218 (11th Cir. 2010). [R. 33103.005, 33-103.006, and 33-103.007].

If an inmate is filing a medical grievance, he may bypass use of an initial informal grievance and begin his medical complaint with a formal grievance to the institutional warden. *See* Fla. Admin. Code R. 33-103.006(3)(e). This is known as a formal "Grievance of a Medical Nature," *Id.* at R. 33-103.008. If the inmate is dissatisfied with the result of the medical formal

grievance, the inmate may appeal to the Office of the Secretary. *Id*. at R. 33-103.007. *See Thompson v. Nichols*, 3:11CV423/RV/CJK, 2015 WL 1484807, at *3 (N.D. Fla. 2015).

An inmate may not initiate a grievance with the Office of the Secretary except in cases of emergencies, reprisals, HIPAA violations, and other limited situations defined by R. 33.103.007(6). In such cases, the direct grievance "shall state . . . that the grievance concerns either an emergency or is a grievance of a reprisal . . . [or] HIPAA" and "must clearly state the reason for by-passing the informal and formal grievance steps of the institution or facility[.]" *Id.*

The rules establish strict time frames for inmates to file grievances. Pursuant to Rule 33-103.011 ("Time Frames for Inmate Grievances"), informal grievances must be received "**within 20 days** of the when the incident or action being grieved occurred," and formal grievances (including direct formal grievances of a medical nature) must be received "no later than **15 calendar days**" from either: (1) the date on which the informal grievance was responded to; or (2) the date on which the incident or action being grieved occurred if an informal grievance was not filed. [R. 33-103.011(1)(a), and (b)]. Direct grievances to the Central Office must also be received **within 15 days** from the date on which the incident or action being grieved occurred. *[See* R. 33-103.011(1)(d)].

Grievance appeals to the Office of the Secretary "[m]ust be received **within 15 calendar days** from the date the response to the formal grievance is returned to the inmate." R. 33-103.011(1)(c). To eliminate issues with mailing, the rules make provisions for appeals to the Secretary to be receipted locally at the institution/facility, *See* R. 33103 .006(8).

## C. **Plaintiff's Grievances.**

Although Plaintiff does not attach any grievances to the Amended Complaint, Plaintiff attached (5) grievances, appeals and the administrative responses as part of the original Complaint, which Plaintiff seemingly relies, therefore the same are part of the Court record. [ECF 1 at 37, 44-

54]. Although not a model of clarity, Plaintiff makes references to the denial of proper treatment following his July 9, 2019 injury, but any cursory mention of specific dates of *treatment* demonstrates that Plaintiff's grievances are untimely. Additionally, Plaintiff repeatedly makes general references to other grievances, sick calls and request forms, but did not attach the same to his pleading. [*Id.*].

A plain reading of Plaintiff's allegations in the Amended Complaint and review of the previously filed attachments demonstrate that WOOD failed to comply with the grievance and appeals procedure and his claims are therefore barred by the apparent failure to comply with the administrative process and exhaust his administrative remedies.

WOOD alleges that on September 14, 2019, he filed a Request for Administrative Remedy or Appeal the Secretary Florida Department of Corrections (#19-6-34554)[3], which was received by the Office of the Secretary on September 23, 2019. [ECF 1 at 54]. Within the grievance, Plaintiff mentions that on July 15, 2019, an officer contacted Medical Emergency due to an incident on July 9, 2019 involving WOOD and a serious injury (broken arm). He further states that on July 17-18, 2019, ARNP Nichols refused to treat him with *proper* care. [*Id.*]. There is no mention of Dr. Semple or Warden Maiorana. Notwithstanding the discussion as to the adequacy of the care as argued *supra*, based upon the alleged treatment date(s), or failure to render the same as to ARNP Nichols, Plaintiff was required to submit this medical grievance within (20) days, or by August 7, 2019 at the latest. Plaintiff failed to do so. Therefore, Plaintiff's submission on September 14, 2019 is untimely. Moreover, in the Secretary's response on September 26, 2019, this grievance was determined to be filed in non-compliance with Chapter 33-103.006, Inmate Grievance Procedure in that a) Plaintiff failed to provide a copy of the formal grievance filed at the

---

[3] It appears that Plaintiff's Grievance #19-6-34554 continues to a second page, however only page 1 was attached to ECF 1.

institutional level as required by the rule or b) Plaintiff's reason for by-passing the that level of the grievance procedure was not acceptable. [ECF 1 at 37]. The appeal was returned without action. [*Id.*].

WOOD claims that on September 30, 2019, he submitted another appeal to the Secretary, Florida Department of Corrections (#19-6-35754), which was also determined to be filed in non-compliance with Chapter 33-103.006, Inmate Grievance Procedure by failing to provide a copy of the formal grievance filed at the institutional level as required by the rule or the reason for by-passing the that level of the grievance procedure is not acceptable and that the Secretary's records did not reflect a medical related formal grievance had been received by the Department. [ECF 1 at 45, 47]. In this grievance, without providing any dates, Plaintiff mentions having been denied *any relief* at BRCF by medical staff "Ms. Nichols" and "Mr. Smith." [ECF 45]. He states that he filed sick calls, request forms and *prior* grievances over the last month, however, Plaintiff does not attach any of those grievances to his Complaints. [*Id.*]. Plaintiff mentions speaking with an unspecified "Medical Director" on September 20, 2019 but makes no complaint of any treatment of lack thereof on that date, only that a non-party, "Doctor Mr. Smith" was present and failed to answer truthfully as to his assigned job description. [*Id.*]. Grievances are limited to one issue or complaint. *See* Fla. Admin. Code. with Chapter 33-103.006. Plaintiff makes multiple accusations without providing the requisite specificity. For all of the foregoing reasons, Plaintiff did not properly comply with grievance procedure requirements and failed to exhaust.

WOOD claims that on October 6, 2019, he submitted a formal grievance (#1910-185-063) to the Warden at BRCF. [ECF 1 at 48]. Within the grievance in familiar fashion, Plaintiff recites that on July 15, 2019, an officer contacted Medical Emergency due to an incident on July 9, 2019 involving WOOD and a serious injury (broken arm). He further states that on July 17, 2019, ARNP

Nichols and "Doctor Mr. Smith" refused to treat him with *proper* care, except to wrap his broken arm up into a splint, give ibuprofen and sent him back to the dormitory[4].  [*Id.*]. There is no mention of Dr. Semple or Warden Maiorana.  Plaintiff was required to submit this grievance by August 6, 2019.   He failed to do so and thus the grievance was untimely.

Nevertheless, Dr. Semple received, reviewed and evaluated the grievance with the following response provided on October 23, 2019, which was signed off by Warden Maiorana:

> **Review of your record reveals that the medical evaluation and care provided to you for the injury to your arm was appropriate and adequate. You were referred to specialists for your injury.  The recommendations made by the specialists have been followed by our clinician.  If you feel you want to or need to be re-evaluated, sign up for sick call.**

Based on the foregoing, the grievance was denied.  [ECF 1 at 49].   Thereafter, Plaintiff had 15 days to appeal to the Secretary.  Despite the fact that this grievance was not filed timely at the facility level, there is no indication Plaintiff complied with the time requirements of R. 33-103.011(1)(c) in the appeal to the Secretary for Grievance #1910-185-063.

Plaintiff alleges that he submitted *an* appeal to the Secretary, Florida Department of Corrections (#19-6-39560)[5] on October 24, 2019, which was received on November 6, 2019. [ECF 1 at 50, 51].  This appeal was also determined by the Secretary to be filed in non-compliance with Chapter 33-103.006, Inmate Grievance Procedure by failing to provide a copy of the formal grievance filed at the institutional level as required by the rule or the reason for by-passing the that level of the grievance procedure is not acceptable and that the Secretary's records did not reflect

---

[4] Although not pertinent to the discussion as to Plaintiff's exhaustion of administrative remedies, Plaintiff's allegations on October 6, 2019 are contradicted by his own medical records that show that he had x-rays of his right arm, right shoulder, right elbow, right wrist and right hand on July 15, 2019, which were read by ARNP Nichols on July 17, 2019; he was referred to an orthopedic surgeon, Dr. Bennett, for evaluation, which was completed August 8, 2019; and was referred to and seen by a hand specialist, Dr. Pirokowski on August 29, 2017 and October 1, 2019. [ECF 1 at 17-31, 39-41, 43]
[5] Plaintiff's appeal does not make mention to Grievance #1910-185-063.

that Plaintiff provided any appeal log numbers or dates that he submitted appeals to that office. [*Id.* at 51].   Plaintiff was given 15 days from November 13, 2019 to resubmit his compliant grievance at his current location. [*Id.*].  There is no indication that Plaintiff complied, therefore Plaintiff has failed to exhaust his administrative remedies.

On December 1, 2019, Plaintiff submitted a grievance addressed to the Warden (#19-6-42776)[6]. [*Id.* at 52].  Within the same, Plaintiff again recounts his July 9, 2019 injury, that he was sent for x-rays on July 16, 2019 and saw "the doctor" on July 17, 2019, the following day.  Plaintiff does not appear to mention ARNP Nichols, Dr. Semple or Warden Maiorana, specifically. Plaintiff references "an attached form 19-6-35754." [*Id.*]. Grievance #19-6-35754 was returned to Plaintiff by the Secretary on October 9, 2019, which gave Plaintiff 15 days to resubmit at the local facility in compliance with Chapter 33-103, Inmate Grievance Procedure.   [ECF 1 at 47]. Notwithstanding the fact that the Grievance #19-6-35754 was deficient, there is no indication that Plaintiff complied with the October 9, 2019 directive from the Secretary.

The Secretary responded on December 11, 2019 indicating that the grievance was inadvertently forwarded to the Office of the Secretary and was returned without action.  [*Id.* at 53]. Plaintiff was given 15 days from the mail-stamped date (December 18, 2019) to resubmit his grievance at his current location and was directed to attach a copy of the response and any relevant attachments to his re-filed grievance.  Notwithstanding the remoteness from the subject incident or his treatment dates to this time frame, there is no indication that Plaintiff complied with this directive.

WOOD has not shown compliance with the grievance requirements despite his knowledge of the same and the availability of the procedure with clear directives from the Secretary, Florida

---

[6] The copy of Plaintiff's Grievance #19-6-42776 attached to his initial Complaint is almost entirely illegible.

Department of Corrections to cure deficiencies.  In failing to properly exhaust his administrative remedies, his instant claim is barred.

**IV.**     **Plaintiff's claims against Warden Maiorana should be dismissed as he, as a non-medical professional is entitled to rely upon the medical judgment of the practitioner regarding Plaintiff's medical needs and Warden Maiorana is entitled to immunity from suit in his individual and official capacity.**

A.   <u>Reliance upon Medical Judgment</u>

Plaintiff has also sued Warden Maiorana for deliberate indifference to his serious medical need.  Warden Maiorana was only involved in Plaintiff's medical treatment to the extent that he signed off on Dr. Semple's October 23, 2019 response to Plaintiff's grievance. [ECF 49].  In this circumstance, where the Warden is "not a medical professional, nor directly involved in [plaintiff's] medical care," the plaintiff "must establish that Warden Maiorana was responsible for his constitutional deprivation in a supervisory capacity." *Sealey v. Pastrana*, 399 F. App'x 548, 552 (11th Cir. 2010).

"[S]upervisors can be held liable for subordinates' constitutional violations on the basis of supervisory liability under" Section 1983. *Mathews v. Crosby*, 480 F.3d 1265, 1270 (11th Cir. 2007). "Supervisory liability under § 1983 occurs 'when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between the actions of the supervising official and the alleged constitutional deprivation.'" *Id.* (quoting *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir.2003)).

> A causal connection may be established when: 1) a "history of widespread abuse" puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he or she fails to do so; 2) a supervisor's custom or policy results in deliberate indifference to constitutional rights; or 3) facts support an inference that the supervisor directed subordinates to act unlawfully or knew that subordinates would act unlawfully and failed to stop them from doing so.

*Id.*

Here, the Amended Complaint fails to plead sufficient facts to establish that Warden Maiorana violated WOOD's constitutional rights on this one occasion.   A single instance of violation of constitutional rights will not suffice to hold a supervisor liable for her acts, or for her policies.   Nonetheless, "supervisory officials are entitled to rely on medical judgments made by medical professionals responsible for prisoner care." *Williams v. Limestone Cty., Ala.*, 198 F. App'x 893, 897 (11th Cir. 2006) (citing *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993); *White v. Farrier*, 849 F.2d 322, 327 (8th Cir. 1988)).

Here, there are no allegations of widespread abuse that would put Warden Maiorana on notice of the need to correct the alleged deprivation of adequate medical care, and the facts do not support an inference that they directed subordinates to act unlawfully.   Dr. Semple clearly indicates in the grievance response that review of Plaintiff's records revealed that the medical evaluation and care provided to you for the injury to your arm was appropriate and adequate and including referrals to specialists and thereafter recommendations made by the specialists were followed by the facility clinician.   [ECF 1 at 49].

As a non-medical supervisor, Warden Maiorana was entitled to rely on Dr. Semple's medical judgment.   Plaintiff has not shown how Warden Maiorana was deliberately indifferent to Plaintiff's serious medical need other than his bald assertions that as Warden, he should have seen that Plaintiff was taken to medical appointments and that the medical staff at BRCF were providing adequate care.   Such allegations simply do not give rise to a legally cognizable claim against a non-medical supervisor.

B.   Warden Maiorana is immune from suit in his official capacity as a prison official pursuant to the Eleventh Amendment to the U.S. Constitution.

Plaintiff's Amended Complaint alleges that he is suing Warden Maiorana in his "official capacity." *See* Am. Compl., ECF 6 at 12. Plaintiff seeks monetary and punitive damages for relief

against this Defendant. *Id.* The Eleventh Amendment absolutely bars suits for damages against state actors. *See, e.g.*, *Gamble v. Florida Dep't of Health & Rehab. Servs.*, 779 F.2d 1509, 1511 (11th Cir. 1986). There is no dispute that the Florida Department of Corrections, and its employees, are state actors. Accordingly, this Defendant is entitled to sovereign immunity for monetary damages that Plaintiff seeks from this Defendant in his *official* capacity.

To the extent the Amended Complaint seeks monetary damages against this Defendant in his *individual* capacity, "qualified immunity shields government officials from individual-capacity suits for actions taken while performing a discretionary function so long as their conduct does not violate a 'clearly established' constitutional right." *Montanez v. Carvajal*, 889 F.3d 1202, 1207 (11th Cir. 2018). This shield allows officials to carry out their discretionary duties without the fear of personal liability or harassing litigation. *Manners v. Cannella*, 891 F.3d 959, 967 (11th Cir. 2018). Qualified immunity protects from suit "all but the plainly incompetent or one who is knowingly violating the federal law." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (quotation marks omitted). The applicability of qualified immunity presents a question of law for a court to decide. *Sims v. Metro. Dade Cty.*, 972 F.2d 1230, 1234 (11th Cir. 1992).

To be entitled to qualified immunity, an officer must establish that he was acting within his discretionary authority during the incident. *Manners*, 891 F.3d at 967. The officer proves that he acted within his discretionary authority "by showing objective circumstances which would compel the conclusion that his actions were undertaken pursuant to the performance of his duties and within the scope of his authority." *Roberts v. Spielman*, 643 F.3d 899, 903 (11th Cir. 2011) (quotation marks omitted). Here, Warden Maiorana was acting within his discretionary authority when he signed off on Plaintiff's single grievance prepared by Dr. Semple [ECF 1 at 49]. As a

warden, he is authorized to sign off on grievances directed to him at the facility level as a reviewing authority under Fla. Admin. C. 33-103.002(15).

If an officer establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that the officer violated a constitutional right, *and* that the constitutional right was clearly established at the time of the alleged deprivation of the right. *Montanez*, 889 F.3d at 1207.

The Eleventh Circuit employs two methods for determining whether a reasonable officer would know that his conduct is unconstitutional. *Id.* at 1291. First, a right is clearly established if, under the relevant caselaw at the time of the violation, "a concrete factual context exists so as to make it obvious to a reasonable government actor that his actions violate federal law." *Id.* (quotation marks omitted). Relevant caselaw is limited to the case law Supreme Court of the United States, published case law by the Eleventh Circuit Court of Appeals, and the highest court of the state under which the claim arose. *Coffin v. Brandau*, 642 F.3d 999, 1013 (11th Cir. 2011). Alternatively, the Court may examine the officer's conduct to determine "whether that conduct lies so obviously at the very core of what the [Constitution] prohibits that the unlawfulness of the conduct was readily apparent to the officer, notwithstanding the lack of fact-specific case law." *Fils*, 647 F.3d at 1291 (quotation marks omitted). This second method, known as obvious clarity, is a narrow exception to the general rule that only caselaw and specific factual scenarios can clearly establish a constitutional violation. *Id.*; *see also Coffin*, 642 F.3d at 1015 (stating that obvious clarity cases are rare).

Clearly established law "should not be defined at a high level of generality" and "must be particularized to the facts of the case." *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (quotation marks omitted). Although there need not be a case directly on point for a right to be clearly established,

"existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* at 551 (quotation marks omitted). While "general statements of the law are not inherently incapable of giving fair and clear warning to officers," the unlawfulness must be apparent in the light of pre-existing law. *Id.* at 552 (quotation marks omitted); *see also Vaughan v. Cox*, 343 F.3d 1323, 1332 (11th Cir. 2003) (stating that the "salient question . . . is whether the state of the law gave the defendants fair warning that their alleged conduct was unconstitutional") (quotation marks omitted)). "[I]f case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." *Oliver v. Fiorino*, 586 F.3d 898, 907 (11th Cir. 2009). The Eleventh Circuit "has often been reluctant to reject qualified immunity for deliberate indifference to medical need claims that 'are highly fact-specific.'" *Gilmore v. Hodges*, 738 F.3d 266, 280 (11th Cir. 2013).

As Warden Maiorana has established that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that the warden violated a constitutional right, *and* that the constitutional right was clearly established at the time of the alleged deprivation of the right. In the instant case, the general assertions from Plaintiff in his Amended Complaint – that the warden failed to provide oversight to medical provider, failed to insure proper care is rendered and that inmates were transported to outside medical appointments – are insufficient to demonstrate a legally cognizable claim that Warden Mairoana's conduct was unconstitutional. As such, he is entitled to immunity.

## V. <u>Conclusion</u>

Since WOOD has not exhausted his administrative remedies for his deliberate indifference claims against Dr. Semple, ARNP Nichols and Warden Maiorana by filing a timely, compliant grievance(s) or appeal(s), WOOD's lawsuit should be dismissed with prejudice. The Supreme

Court of the United States has held that an inmate ***must*** comply with grievance procedures, including time deadlines of a prison in order to properly 'exhaust' administrative remedies and failing to miss a deadline or follow procedures is fatal to a prisoner's Section 1983 claim which WOOD here has failed to do for all of his claims. *Woodford,* 548 U.S. 81 at 90-93; *See* also *Jones,* 549 U.S. 199 at 218.

Moreover, Plaintiff has failed to state a claim upon which relief can be granted pursuant to 42 U.S.C. § 1983 for the alleged deliberate indifference to his serious medical needs.  Based on the foregoing, Plaintiff's Amended Complaint should be dismissed as a matter of law as Plaintiff has failed to exhaust his administrative remedies prior to filing suit pursuant to 42 U.S.C. § 1997(e) and Plaintiff has also failed to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Finally, all of Plaintiff's claims against Warden Maiorana should be dismissed as he is immune from suit as a prison official.

### CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(B) and (F)

Pursuant to Local Rule 7.1(B), an attorney conference with unrepresented (pro se) parties in custody is not required before the filing of a motion in this Court. The foregoing motion and memorandum of law complies with Local Rule 7.1(F) as, combined, the sections contain only 6,415 words.

Respectfully submitted this 4th day of September, 2020.

By:   s/ Jeffery R. Lawley
Jeffery R. Lawley, Esq.
Florida Bar No.: 596027
Email: jrl@bclmr.com
BILLING, COCHRAN, LYLES,
 MAURO & RAMSEY, P.A.
SunTrust Center, 6th Floor
515 East Las Olas Boulevard

Fort Lauderdale, FL  33301
Tel: 954-764-7150
Fax: 954-764-7279
***Attorneys for Defendants***
**Marsha Nichols, ARNP, Warden Charles Maiorana and George J. Semple, D.O.**


      I hereby certify that on this 4th day of September, 2020, I electronically filed a true and correct copy of the foregoing with the Clerk of the Northern District Court by using the CM/ECF system. I further certify that I mailed the foregoing document by first-class mail to the following non-CM/ECF participant:

Joseph G. Wood  - DC#894702
Plaintiff, *pro se*
Jefferson Correctional Institution
Inmate Mail/Parcels
1050 Big Joe Road
Monticello, Florida 32344


By: */s/ Jeffery R. Lawley*
Jeffery R. Lawley
Fla. Bar No. 0596027
jrl@bclmr.com